IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| MILDRED GRANT | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:12-CV-137 (WLS) |
| | : | |
| PALMYRA MEDICAL CENTER | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Presently pending before the Court is Defendant Palmyra Medical Center's Motion for Summary Judgment. (Doc. 31.) For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

## PROCEDURAL BACKGROUND

Plaintiff Mildred Grant, *pro se* filed her initial complaint in the above-captioned matter on September 11, 2012, asserting claims under Title VII of the Civil Rights Act (hereinafter "Title VII"), as amended at 42 U.S.C §2000(e), *et seq.*, for race discrimination and hostile work environment. (Doc. 1.) On September 18, 2012, the Court received notice Plaintiff would be represented by counsel rather than proceeding *pro se*. (Doc. 5.) On February 8, 2013, Defendant answered Plaintiff's complaint. (Doc. 11.)

On February 11, 2014, Defendant moved for Summary Judgment. (Doc. 31.) On March 11, 2014, Defendant by and through counsel, filed her Response in Opposition to Defendant's Motion for Summary Judgment. (Doc. 34.) On March 28, 2014, three days

1

after the Court's deadline, Defendant replied to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment. (Doc. 36.) On May 14, 2014, the Parties jointly filed a Motion to Stay All Proceedings pending resolution of Defendant's Motion for Summary Judgment. (Doc. 37.) On May 19, 2014, the Court entered an Order granting the Parties' Motion, staying all proceedings until the Court ruled on Defendant's Motion for Summary Judgment. (Doc. 38.)

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

### A. Summary Judgment Standard

#### a. Federal Rule of Civil Procedure 56

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, No. 12-15994, 2014 WL 92094, *3 (11th Cir. Jan. 10, 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can

meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsuhita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### b. Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's

>>statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56.  Here, Defendants properly filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. Likewise, Plaintiff filed the proper response to Defendant's statement of facts and memorandum.  Having established the applicable standards, the Court will proceed with reviewing the Motion's merits.

### B.  Relevant Factual Summary[1]

Plaintiff, an African-American female, worked as a Registered Nurse ("RN") for Defendant beginning in July 2002. (Doc. 31-2, at ¶1.)  Between 2007 and 2008, Plaintiff was transferred to the Radiology Department.  (*Id.,* at ¶1.)  As the only RN in the Radiology Department, Plaintiff worked on an average twenty cases each month, administering stress labs, nuclear medicine, CAT scans, and ultrasounds to patients, all of which took one to two hours to complete. (*Id.,* at ¶¶4-7.)  According to Plaintiff, around the same time she joined the Radiology Department she began frequently working with Dr. William B. Abbott ("Dr. Abbott"). (Doc. 30, at 68 ¶¶20-25.)  Dr. Abbott treated her differently than her Caucasian colleagues, often interacting with verbal aggression and hostility Plaintiff claims. (Doc. 1, at 3.)  Further, Plaintiff claims her Caucasian colleagues, Linda Parlardy ("Parlardy") and Tessa Greene were free to interact with Dr. Abbott but she was not.  (Doc. 30, ¶¶7-13.)  At one point, according to Plaintiff, Dr. Abbott became so frustrated with Plaintiff he yelled in the hallway that he wanted "her out of here" indicating he wanted her to be fired. (*Id.*, ¶¶16-7.)

---

[1] The following facts are derived from the Complaint (Doc. 1); Defendant's Statement of Undisputed Facts (Doc. 31-2); Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. 35); and the records in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from pleadings, the discovery and disclosure materials on file, and affidavits, all of which are construed in the light most favorable to the Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Plaintiff also encountered some disciplinary issues while working for Defendant. As a result of an allegedly inappropriate attitude towards coworkers, Plaintiff was both required to participate in "verbal counseling" and notified in her 2011 yearly performance review she needed to continue working on building positive relationships with co-workers. (*Id.*, at ¶8; Doc. 30, at 132-143.) Addressing comments in her performance review regarding her working relationship with co-workers, Plaintiff formally replied by writing, "I believe I have an outstanding professional relationship with my co-workers. If there were/are any specific incidents that escalated into larger problems with co-workers I am unaware." (Doc. 30, at 142.)

In 2011, Defendant experienced a decrease in patient volume particularly affecting Defendant's Radiology Department, causing a significant reduction in the number of tests administered. (Doc. 31, at ¶10.) Plaintiff agrees Defendant experienced a decrease in patient volume, (Doc. 35, at ¶9), but claims her workload did not decrease. (*Id.*, at 35.) On August 12, 2011, as a result of a decrease in patient volume, Defendant's Chief Operating Officer, Elizabeth Durrence ("Durrence"), a Caucasian female, notified Plaintiff of her decision to eliminate the RN position Plaintiff held. (Doc 31-2, ¶12; Doc. 31, at ¶7-8; Doc. 35, at ¶12.) Defendant's Vice President of Human Resources, Tracy St. Amant ("St. Amant"), and Defendant's Chief Nursing Officer, Holly McGucken ("McGucken"), both Caucasian females, were in attendance for Durrence's meeting with Plaintiff as well. Although Plaintiff's position was eliminated, Durrence offered Plaintiff two options: (1) Plaintiff could accept a Per Diem Resident Nurse ("PRN") position, working on an "as needed" basis, and receive a partial severance package; or (2) Plaintiff could choose to terminate her employment in exchange for a full severance package. (Doc. 35, at ¶¶14-15.) At the conclusion of Plaintiff's meeting with Durrence, Plaintiff remained unsure about which option she would accept and told Durrence, considering she had no work scheduled for the remainder of the day, she would gather her belongings and leave for the day. (Doc. 35, at ¶17.)

Plaintiff claims while gathering her belongings she was stopped by Parlardy, a Caucusian female, then Defendant's Lead Radiology Technician. (Doc. 31-2, ¶20.) According to Plaintiff, she calmly discussed her future plans in light of her position being terminated with Parlardy. (Doc. 35, at ¶¶20-1.) Durrence, who overheard Plaintiff's conversation with Parlardy, and Parlardy herself, characterize Plaintiff's conversation with Parlardy as aggressive and inappropriate. (Doc. 31-2, at ¶21; Doc. 31-3, at ¶12; Doc. 31-5, at ¶8.) Johnny James ("James"), a Caucasian male colleague, also approached Plaintiff to ask if she was available to work the following week and Plaintiff responded by telling him she would not be able to. (Doc. 30, at 113.)

On August 15, 2011, St. Amant contacted Plaintiff and informed her Defendant viewed her interactions with Parlardy and Jones as inappropriate and, as a result, decided Plaintiff's option to work as a PRN and receive partial severance would be revoked. (Doc. 31-2, at ¶¶25-6; Doc. 35, at ¶25-6.) On October 31, 2011, after receiving a full severance package from Defendant, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge claiming race discrimination and hostile work environment. (Doc. 31-2, at ¶28.) On September 11, 2012, Plaintiff filed a complaint in the above-captioned matter claiming race discrimination and hostile work environment under Title VII.

**C. Analysis**

Defendant claims it is entitled to summary judgment as to both Plaintiff's race discrimination and hostile work environment claim. The Court will consider each of Plaintiff's claims in turn.

**a. Plaintiff's Race Discrimination Claim**

Plaintiffs attempting to establish a claim for race discrimination may do so through three generally accepted methods: (1) direct evidence of discriminatory intent, (2) circumstantial evidence satisfying the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973), or (3) statistical proof. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir. 1989). Since Plaintiff offers no direct proof or statistical evidence to support her

race discrimination claim, the Court will review the circumstantial evidence within the burden-shifting framework established in *McDonnell Douglas Corp.* Under this framework, in order to establish a *prima facie* case for race discrimination plaintiff must show she: (1) is a member of a protected class; (2) is qualified for the position; (3) suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably or she was replaced by someone outside of her protected class. *Rice-Lamar v. City of Ft. Lauderdale,* 232 F.3d 836, 842 (11th Cir. 2000). Only after plaintiff establishes a *prima facie* case of discrimination, creating a presumption of discrimination, does the burden shift to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action to rebut that presumption. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998).

Plaintiff fails to provide a *prima facie* case for race discrimination because she fails to show her Caucasian colleagues were either sufficiently similarly situated or treated more favorably in comparison. In order to show her colleagues were similarly situated requires a showing of similarities in all relevant aspects. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Plaintiff must show that the employee or employees she compares herself with have very similar job-related characteristics and are similarly situated in order to properly determine whether the plaintiff has been treated differently. *Wehunt v. R.W. Page Corp.*, 352 F.Supp.2d 1342, 1351 (M.D. Ga. 2004) (*citing MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991)).

While Plaintiff claims her Caucasian colleagues were treated differently, the record is devoid of any evidence to support her contention.[2] Plaintiff opines throughout her pleadings of alleged disparate treatment due to race but offers no evidence in support of her opinions or conclusions. In the Eleventh Circuit, evidence establishing the quantity and quality of colleague's misconduct must be nearly identical to plaintiff's misconduct to

---

[2] In Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, (Doc. 34), Plaintiff does not address Defendant's challenge to her race discrimination claim at all. Further, Plaintiff's complaint, while noting she was treated differently than her white colleagues, does not identify individuals by name. (Doc. 1.)

7

prevent courts from "second-guessing employer's reasonable decisions and confusing apples with oranges." *Mannicia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999). Plaintiff's opinion alone, considering there's insufficient evidence to infer racial discrimination, is not enough to make a *prima facie* showing. *See Holifield v. Reno*, 115 F.3d 1555, 1564 ("opinion, without more, is not enough to establish a prima facie case of race discrimination.") The Court finds that upon review of the Record, no genuine material issue of fact remains as to whether Plaintiff was terminated based on her race. Therefore, Defendant is entitled to summary judgment as it relates to Plaintiff's race discrimination claim.

### b. Hostile Work Environment

Plaintiff also contends she was subject to a hostile work environment as a result of race due to Dr. Abbott's treatment. "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Title VII is not meant to serve as "a general civility code." *Satchel v. Sch. Bd. of Hillsborough Cnty.*, 251 F. App'x 626, 630 (11th Cir. 2007) (*citing Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). As such, to prove a prima facie case of hostile working environment, a plaintiff must establish that: (1) he or she belongs to a protected group; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based upon a protected characteristic (here, race and gender); (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for said environment under either a theory of direct or vicarious liability. *Miller*, 277 F.3d at 1275.

Defendant argues Plaintiff cannot refer to anything in the record evincing a racial animus on the part of Dr. Abbott. The Court agrees. Even accepting Plaintiff's characterization of Dr. Abbott as true, at the most, his actions could be described as "disrespectful or

unprofessional", not racially-motivated.  Plaintiff takes umbrage with Dr. Abbott's actions during the general course of work.  In instances where the majority of the actions complained of are general work matters, absent clear evidence to the contrary, a hostile work environmental claim fails as a matter of law.  *See Pierri v. Cingular Wireless, LLC*, 397 F.Supp.2d 1364, 1379 (N.D. Ga. 2005) (where "actions complained of are general work matters, a plaintiff cannot, as a matter of law, make out a case for gender [or race] harassment").

Furthermore, even if the Court accepted Plaintiff's contention Dr. Abbott acted with racial animus, his conduct would not be severe enough to create a hostile work environment claim.  "In evaluating the objective severity of the harassment, we consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir.2002) (quotation omitted). "[R]ude, insulting, insensitive" conduct that "[f]alls more in the category of epithets or boorish behavior… [is] not actionable under Title VII." *MackMuhammad v. Cagle's Inc.*, 379 F. App'x 801, 805 (11th Cir. 2010).

Reviewing the record, in a light favorable to Plaintiff, the Court finds no evidence indicating that Abbott's conduct could be considered hostile under Title VII. Plaintiff predicates her hostile work environment claim, in part, on not being able to work comfortably because she "would have to take the time out to ask other people to do things" for her, given Dr. Abbott's demeanor.  (Doc. 30, at 89 ¶¶14-18.)  Plaintiff continually refers back to one particularly instance where Dr. Abbott yelled, in her impression, that he wanted her fired as well. (*See* Doc. 30, at ¶¶16-7.)  Even accepting these two allegations as true, and others like them,  Dr. Abbott's comments and Plaintiff's discomfort still fall short in meeting the frequency, severity, humiliation, and interference requirements necessary to prevail on a Title VII hostile work environment claim.  Further, Plaintiff provides no evidence indicating

that Abbott's conduct was based on race or gender. Promulgating general civility and quelling sporadic derisive language is not the business of this Court. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) ("Properly applied, [courts] will filter out complaints attacking the ordinary tribulations of the workplace….") (citations omitted.) While Plaintiff's assertions, if true, do suggest what could be viewed as ill-mannered or unprofessional behavior on the part of Dr. Abbott, without more that alone does not create the requisite *prima facie* showing for a Title VII hostile work environment claim. The Court finds no material issues of fact remain with regard to Plaintiff's hostile work environment claim. Accordingly, Defendant is entitled to summary judgment as it related to Plaintiff's hostile work environment claim as well.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. (Doc. 31.) It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall take nothing by her Complaint (Doc. 1), and **JUDGMENT** shall be entered in favor of the Defendant.

**SO ORDERED**, this  30th  day of September, 2014.

/s/ W. Louis Sands

**W. LOUIS SANDS,  JUDGE**
**UNITED STATES DISTRICT COURT**